28 C.C.P.A. (Patents)

## In re ALLEN.
### Patent Appeal No. 4398.

Court of Customs and Patent Appeals.

Dec. 9, 1940.

Harold T. Stowell, of Washington, D. C. (Joseph N. Nielsen, of New York City, of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming a decision of the examiner rejecting, for want of patentability over the cited prior art, claims 1, 2, 3, 5, 7, 8, 9 and 10 of appellant's application for a patent.

The examiner also rejected claims 4, 6, 11· and 12 for the same reason, but such rejection was reversed by the Board of Appeals and these claims stand allowed.

Claims 1, 2, 3 and 5 are method claims; claims 7, 8, 9 and 10 are for a plastic composition.

Claims 1, 3 and 8 are illustrative of the claims in issue and read as follows:

"1. A method of making polystyrene material suitable for molding which comprises polymerizing styrene to a polystyrene having a molecular weight exceeding 40,000 and treating the polymerized

styrene to reduce methanol soluble components to less than 3% of the material."

"3. A method of making polystyrene material suitable for molding which comprises polymerizing styrene to a polystyrene having a molecular weight exceeding 40,000 and treating the polymerized styrene by mechanical working to reduce methanol soluble components to less than 3% of the material."

"8. A plastic composition comprising a polymerized styrene resin having a molecular weight in excess of 40,000 and containing less than 3% of methanol soluble material, characterized by being moldable under heat and pressure to articles free from frosting for at least six months after molding."

The reference cited is: Wulff et al., 2,077,542, April 20, 1937.

The alleged invention is described by the Board of Appeals in its decision as follows:

"The subject matter of the appealed claims relates to the making of polystyrene material suitable for molding and which will be free of a phenomenon known as frosting. In the past it has been found that in attempting to make articles of polystyrene such articles may have a clear and transparent appearance at the time they are produced but later, they assume a cloudy or frosted appearance which apparently is due to the formation of small cracks in its surface. Appellant contends that this frosting is the result of the presence of some of the polystyrene which has not been completely polymerized. This portion is generally referred to here as methanol soluble.

"It is not deemed necessary to discuss the steps employed in polymerizing the resin other than to say that it is carried to the point where the molecular weight exceeds 40,000. In order to eliminate a portion of the methanol soluble content, the material is subjected to the working action of differential rollers. This kneading action is for the purpose of reducing the methanol soluble content to less than 3%. It is not clear just how the methanol soluble content is removed. Apparently it could be done by squeezing it out as a liquid by washing it with methanol or permitting the undesirable content to evaporate. * * *"

With respect to the Wulff et al. patent the board stated: "The Wulff patent dis-

closes a method of polymerizing the polystyrene which is practically the same as that disclosed in this case, but in order to reduce the undesirable methanol soluble fraction, the patentee proposed to extrude the material through a small orifice. Apparently in this manner it is expected that evaporation of the partially polymerized styrene will produce a product which is free of frosting. During the prosecution of this case, appellant has filed affidavits tending to show that while the extrusion process disclosed in the patent will reduce the amount of methanol soluble styrene, still it will not bring it down to the point where it is free of frosting."

The original decision of the board was rendered on September 30, 1939. With respect to the reversal of the decision of the examiner as to claims 4, 6, 11 and 12, the board stated: "Claims 4, 6, 11 and 12 are limited to a method which calls for 'mechanical working'. We do not believe that the Wulff patent is a fair reference against these claims. While the extrusion of the plastic material may tend to remove some of the methanol soluble component, still such process cannot properly be called 'mechanical working.'"

The board affirmed the decision of the examiner as to claims 1, 2, 3, and 5 upon the ground that they call merely for the treatment of the polymerized styrene so as to produce the desired result, are broad enough to cover any process which will produce a product which has less than 3% of the methanol soluble material, and are not patentable over the disclosure of the Wulff et al. patent.

With regard to claims 7, 8, 9 and 10 the board held that there was no patentable distinction between the composition therein described and the composition disclosed by the Wulff et al. patent.

On October 6, 1939, appellant moved for reconsideration of the board's decision as to claim 3, calling attention to the fact that this claim called for mechanical working of the material and belonged to the same class of claims as claims 4, 6, 11 and 12, which the board held should be allowed.

On November 16, 1939, appellant filed with the Commissioner of Patents a notice of appeal to this court, together with reasons of appeal, assigning error in the affirmance of the rejection of claims 1, 2, 3, 5, 7, 8, 9 and 10. On the next day, November 17, 1939, the board rendered a decision which reads as follows:

"This is a petition for reconsideration of our decision dated September 30, 1939.

"Reconsideration of claim 3 is requested. Through inadvertence this claim was not listed as allowable in our former decision. It contains the same limitation as the claims which we held allowable.

"The decision of the examiner is reversed as to claims 3, 4, 6, 11 and 12 and is reaffirmed as to the remaining claims.

"The petition is granted to the extent indicated."

On November 22, 1939, appellant filed with the Commissioner of Patents a paper headed "Supplemental", purporting to give notice of appeal to this court from the decisions of the Board of Appeals rendered "on or about the 30th day of September, and the 17th day of November, 1939, rejecting my above-entitled application and refusing me a patent for the invention set forth therein."

Then follow reasons of appeal which are identical with the reasons of appeal filed on November 16, 1939, except that claim 3 is not included in the reasons of appeal filed on November 22, 1939.

It will be observed that this so-called supplemental notice of appeal was filed more than 40 days after the original decision of the Board of Appeals of September 30, 1939. It will also be observed that the decision of the board of November 17, 1939, grants the petition for reconsideration as to claim 3; it also purports to reverse the examiner as to claims 3, 4, 6, 11 and 12, and the decision of the examiner is "reaffirmed" as to the remaining claims, although the petition for reconsideration embraced claim 3 only.

In view of this state of the record we are called upon to decide the question of the jurisdiction of the Board of Appeals to consider a petition for reconsideration of an appealable decision after a notice of appeal to this court and reasons of appeal have been filed with the Commissioner of Patents.

This question has been presented to us a number of times, but heretofore we have not found it necessary to decide it.

In the case of Raiche v. Foley, 103 F.2d 920, 921, 26 C.C.P.A., Patents, 1235, a motion for reconsideration was filed by Raiche after he had filed his notice and reasons of appeal. The Board of Appeals denied the request upon the ground that it had no jurisdiction to consider the same.

Appellant took an appeal to this court requesting us to review the decision of the board refusing to consider the petition for reconsideration. On motion of appellee there we dismissed the appeal on the ground that the appeal did not present any issue of priority or question ancillary thereto. In our opinion in that case we stated:

"The appellee contends that at the time of filing the petition for rehearing involved in this controversy, appeal had been taken and was pending in this court, and for supporting authority cites Bakelite Corp. et al. v. National Aniline & Chemical Co. et al., 2 Cir., 83 F.2d 176; Jensen et al. v. Lorenz et al., 68 App.D.C. 39, 92 F.2d 992; and United States ex rel. White v. Coe, 68 App.D.C. 218, 95 F.2d 347, and argues that:

"It is text-book law and nothing more than common sense that 'An intermediate appellate court which has rendered the decision has no power to grant a rehearing after the case has been removed to a higher court.' 4 Corpus Juris Secundum, Appeal and Error, p. 2038, § 1437; 4 Corpus Juris, p. 636, Sec. 2513.

"Appellee points out that in the Clement v. Richards v. Meissner case, supra [1904 C.D. 321], strongly relied upon by appellant, the petition for rehearing was filed before the notice of appeal and that in the Goddard case, supra [Goddard v. Ordway, 101 U.S. 745, 25 L.Ed. 1040], appeals under the statute were allowed by the intermediate court, which is a different situation from that where the appeal is taken from the Board of Appeals under the existing statutory authority. Attention is further directed to the fact that in the Goddard case the bar to considering the petition for rehearing had been removed by granting a motion to vacate the allowance of appeal. Appellee points out that appellant has not attempted to withdraw his appeal from the said award of priority.

"We do not think it necessary to determine whether or not under certain circumstances the Board of Appeals would have the authority to consider a petition for rehearing after the filing of notice of appeal to this court regardless of whether the petition for rehearing was filed before or after the notice of appeal. It is well-settled law that this court in interference cases is limited by statute in its revising and reviewing powers to such an extent that it only has jurisdiction of questions involving priority and questions ancillary thereto. [citing cases.]"

Section 4912, R.S., 35 U.S.C. § 60, 35 U.S.C.A. § 60, reads as follows: "When an appeal is taken to the United States Court of Customs and Patent Appeals, the appellant shall give notice thereof to the commissioner, and file in the Patent Office, within such time as the commissioner shall appoint, his reasons of appeal, specifically set forth in writing."

Rule 151 of the Rules of Practice in the United States Patent Office, relating to proceedings before the Board of Appeals, contains the following provision: " * * * Petitions for rehearings or modification of the decision must be filed within thirty days after the decision or before the limit of appeal expires."

Rule 149 of said rules reads in part as follows: "149. When an appeal is taken to the U. S. Court of Customs and Patent Appeals, the appellant shall give notice thereof to the Commissioner, and file in the Patent Office, within forty days, exclusive of Sundays and holidays but including Saturday half holidays, from the date of the decision appealed from, his reasons of appeal specifically set forth in writing. * * *"

The general rule is that where an appeal has been taken the effect of which is to transfer jurisdiction of the cause to the appellate court, the court from which the appeal is taken can proceed no further with respect to the subject matter of the appeal until the appeal has been disposed of.

Corpus Juris Secundum (4 C.J.S., Appeal and Error, § 607) states the rule as follows: "The perfection of the appellate proceedings, and consequent transfer of jurisdiction vests the appellate court, with exclusive power over the subject matter of the proceedings, and suspends the power of the lower court with reference thereto, although it retains power to do anything necessary to the presentation of the case in the appellate court. [Citing cases.]"

We have no doubt that when a notice of appeal and reasons of appeal in an appealable case are duly filed with the Commissioner of Patents, jurisdiction of the cause is transferred to this court. There is nothing left for the commissioner to do other than to certify the record and transmit it to this court.

■ While our rule XXV provides for the filing in this court of a petition of appeal, this is in no wise jurisdictional and is merely in the interest of orderly procedure, as is our rule for the printing of briefs. That our jurisdiction is not dependent upon the filing in this court of a petition for appeal is recognized by us in the amendment to said rule XXV, adopted on December 5, 1938, which amendment reads as follows: "Provided, however, That if any adverse party in an interference case shall, within twenty days after appellant shall have filed notice of appeal to this court, file notice with the Commissioner of Patents that he elects to have all further proceedings conducted as provided in section 4915 of the Revised Statutes, certified copies of the notice of appeal and the notice of election shall be transmitted to this court by the Commissioner of Patents for appropriate action according to law."

In the case of Galena Manufacturing Co. of Illinois, etc., v. Superior Oil Works, 104 F.2d 400, 26 C.C.P.A., Patents, 1301, we held that where an appellant has filed with the Commissioner of Patents a notice of appeal and reasons of appeal, the commissioner has no authority under section 4911, R.S., 35 U.S.C.A. § 59a, to dismiss the appeal, and that this court alone has jurisdiction to dismiss the appeal.

In the case of Bakelite Corp. et al. v. National Aniline & Chemical Co. et al., 2 Cir., 83 F.2d 176, 177, the United States Circuit Court of Appeals expressly held that an appeal is taken to this court when the notice of appeal and reasons of appeal are filed with the Commissioner of Patents.

With regard to our rule XXV respecting petitions of appeal, the court in the last-cited case said: "The defendants rely upon the rules of the Court of Customs and Patent Appeals applicable to appeals from the Patent Office. Rule XXV requires a party desiring to appeal to file with the clerk a petition showing compliance with sections 60 and 61 of the statute and praying that his appeal may be heard for the reasons assigned therefor to the commissioner; he must also file a certified copy of the record; and rule V requires the payment of a docket fee. In our opinion these rules have to do with perfecting the record on appeal, like our own rules 13 and 14, rather than with what constitutes taking an appeal within the meaning of section 63. * * * [Citing cases.]"

In the case of Jensen et al. v. Lorenz et al., 68 App.D.C. 39, 92 F.2d 992, 994, the United States Court of Appeals for the District of Columbia rendered a decision in harmony with the decision last above cited, stating: "It is our opinion that the plaintiffs took an appeal to the United States Court of Customs and Patent Appeals by force of the proceedings taken by them with the Commissioner. They served notice upon the Commissioner of their intention to appeal, and they filed in the Patent Office within forty days, which was the time required, their reasons of appeal specifically set forth in writing. Other steps were necessary to be taken in the Court of Customs and Patent Appeals to perfect the appeal, but, in so far as the Patent Office was concerned, the appeal had been taken by the action of the appellants as above set out. Bakelite Corporation v. National Aniline & Chemical Co. [2 Cir.] 83 F.2d 176, 177."

In the case of United States ex rel. White v. Coe, 68 App.D.C. 218, 95 F.2d 347, 348, the United States Court of Appeals for the District of Columbia again had occasion to consider this question, and adhered to the views expressed by it in the case of Jensen et al. v. Lorenz et al., supra, stating: "The record reveals that Preston and Preston filed with the Commissioner a notice of appeal, which included an assignment of fifteen reasons of appeal. This constituted the taking of an appeal, and thereafter it was an appeal pending in the Court of Customs and Patent Appeals, within the meaning of section 4915, R.S., as amended [35 U.S.C.A. § 63]. Jensen v. Lorenz, 68 App.D.C. 39, 92 F.2d 992; Bakelite Corporation v. National Aniline & Chemical Co., 2 Cir., 83 F.2d 176. * * *"

It is true that many cases can be found holding that when an appeal *has been allowed* by the court from which an appeal is taken, the granting of a motion for rehearing in effect vacates the appeal; but most of these cases can be distinguished from the case at bar in that the Commissioner of Patents was given no jurisdiction to allow an appeal to this court, for that right was fixed by statute without the necessity of any action of the commissioner.

The case of Goddard v. Ordway, 101 U.S. 745, 752, 25 L.Ed. 1040, illustrates

this distinction. In that case the court stated:

"The allowance of the appeal to Ordway was a judicial act of the court in term time. The order was entered on the minutes as part of what was done in the cause by the court while in session. In Ex parte Lange (18 Wall. 163 [21 L.Ed. 872]), we said that 'the general power of the court over its own judgments, orders, and decrees, in both civil and criminal cases, during the existence of the term at which they are first made, is undeniable.' Bassett v. United States, 9 Wall. 38 [19 L.Ed. 548]; Doss v. Tyack, 14 How. 297 [14 L.Ed. 428]. As part of the 'roll of that term,' they are deemed to be 'in the breast of the court during the whole term.' Bac.Abr., tit. Amendment and Jeofail, A. Under this rule, we think it clear that the court had the power during the term, at the request of Ordway, to set aside the order of allowance and thus vacate the appeal which had been granted in his favor. This was done before any adverse rights had intervened. We are unable to see how the allowance of an appeal differs in this respect from any other judicial order made in the cause. If the one is subject to revocation or amendment while the term continues, so, as it seems to us, must be the other.

"*There is nothing in this which interferes with the rule that where an appeal is allowed all jurisdiction of the suit appealed is transferred to this court.* Here the question is whether an appeal was in legal effect allowed. It is true an order of allowance was granted and entered on the minutes of the court. So long as this order continued in operation, it bound the parties; but as it remained subject to the judicial power of the court during the term at which it was entered, its revocation vacated what had been done, and left the decree standing with no appeal allowed. * * *" (Italics ours.)

It is true that in the case of Clement v. Richards v. Meissner, 1904 C.D. 321, the Commissioner of Patents held that he had jurisdiction, after a notice and reasons of appeal had been filed, to modify or set aside his decision from which the appeal was taken. In his decision the commissioner cited two cases in support of his decision.

The first is the case of Henry v. Allen et al., 147 N.Y. 346, 41 N.E. 694, where it was held that the fact that an appeal had

been taken does not prevent a motion in the trial court for a new trial upon the ground of newly discovered evidence. While the opinion does not so state, we assume that the allowance of an appeal was within the jurisdiction of the trial court; but if otherwise, this decision is not in harmony with the great weight of authority upon the subject of appeals to an appellate court.

The other case relied upon by the commissioner is the case of Goddard v. Ordway, supra, which is not in point for the reasons hereinbefore stated.

■ Upon this branch of the case we conclude, upon the great weight of authority and upon reason, that upon the filing of a notice of appeal from an appealable decision, and reasons of appeal, with the commissioner, the subject matter of the appeal is transferred to this court, and that thereafter until the appeal has been disposed of by us the tribunals of the Patent Office have no jurisdiction to grant a motion for reconsideration of the decision appealed from, even though such motion was made before the filing of such notice of appeal.

It follows from the foregoing that in the case at bar the granting by the Board of Appeals of appellant's motion for reconsideration, after appellant's notice of appeal and reasons of appeal had been filed, was a nullity, and that the board's allowance of claim 3 of appellant's application was of no effect. It likewise follows that appellant's "Supplemental" notice and reasons of appeal is a nullity.

We recognize that this holding may, under the present rules of the Patent Office, create a hardship upon litigants in the Patent Office, for under rule 149 of the Patent Office rules an appeal from a decision must be taken within 40 days, exclusive of Sundays and holidays, from the date of the decision appealed from, while rule 151 provides that petitions for reconsideration or modification may be made at any time before the limit of appeal expires.

Under section 4912, R.S., an appellant must file with the Commissioner of Patents, "within such time as the commissioner shall appoint, his reasons of appeal, specifically set forth in writing." Thus the commissioner has full power to fix by rule the time within which reasons of appeal shall be filed; and he may, if he sees fit, fix one time where no motion for reconsideration has been filed, and a different time in cases

where such a motion has been filed; or he may fix a period running from the decision of the Patent Office tribunal disposing of a motion for reconsideration.

Of course it is not our province to suggest specific rules for the United States Patent Office, but we think it proper to suggest that the present unsatisfactory situation can be corrected by an amendment of the present rules.

It follows from the foregoing that the case is before us only upon appellant's original notice and reasons of appeal, which include the rejection of claim 3 of appellant's application. We therefore proceed to a consideration of the original decision of the Board of Appeals.

As hereinbefore stated, the board reversed the decision of the examiner with respect to claims 4, 6, 11 and 12, and affirmed his decision as to the remaining claims.

The distinction between the claims which the board held allowable and the rejected method claims (other than claim 3) is the element thus described in allowed claim 4: "treating the polymerized styrene by mechanical working to reduce methanol soluble components to less than 3% of the material." This element is set forth in the other allowed claims substantially as set forth in claim 4.

The board inadvertently failed to note that claim 3 contains the same element of "mechanical working" as is found in the allowed claims, and which element in the allowed claims was held by the board to render such claims patentable over the prior art. It was this inadvertence which the board sought to correct in its decision upon the motion for reconsideration of the board's original decision.

We are in agreement with the view of the board that in appellant's process the element of mechanical working of the polystyrene material was new and useful, and there is no hint of this step in the reference relied upon by the examiner. We therefore are of the opinion that claim 3 should be allowed.

With regard to the remaining rejected method claims, Nos. 1, 2 and 5, each of them provides for polymerizing styrene to a polystyrene having a molecular weight exceeding 40,000 and "treating the polymerized styrene to reduce methanol soluble components to less than 3% of the material."

Upon this point the board in its decision stated: "The remaining claims merely call for the treating of the polymerized styrene so as to produce the desirable result. Obviously, these claims are broad enough to cover any process which will produce a product which has less than 3% of methanol soluble material. We are of the opinion that this group of claims is not patentable over the disclosure in the Wulff patent."

Appellant's counsel in their brief admit that, except for the mechanical working of the polystyrene material, the process disclosed in the patent to Wulff et al. is substantially the same as that disclosed by appellant. Their brief states:

"The Wulff et al. patent (Record, pp. 28–33) relates to the production of molded artificial masses and is particularly directed to the injection molding of polymerized compounds such as polymerized styrene.

"The patent discloses the polymerization of styrene by methods which are substantially the same as the method of polymerization described in the application on appeal. The patentees stress the use of an initial styrene of as high purity as possible, stating (Patent, page 3, left column, lines 45–52) that substantial quantities of impurities in the original material reduce the mechanical strength of the final solid product. The patentees further state that by pressing the polymerized product out of the reaction vessel in the form of threads or sticks 'even small remainders of non-polymerized products are readily removed by evaporation' (Patent, page 3, right column, lines 6–24)."

The patent to Wulff et al. states:

"The purity of the initial material should be as high as possible, since in the case of styrene, for example, the presence of any substantial quantities, i. e. from about 2 to about 3 per cent of the styrene, of benzene, xylene or ethyl benzene, reduces the mechanical strength of the solid final products.
* * *
* * *

"We have found that the polymerization products are obtained in a particularly simple manner in such a form that they may be readily pulverized, dissolved, comminuted or rolled out, if after the polymerization, the hot or further heated reaction product, while still soft or plastic, is pressed out from the reaction vessel by the action of a difference in pressure, which

difference may be produced by the utilization of increased internal or reduced external pressure. For example, by the use of suitably shaped nozzles, threads or sticks may be directly produced which, after leaving the nozzles, are still plastic for a certain time and may therefore readily be collected continuously, for example on spools or bobbins. By withdrawing the product in this manner there is obtained the further advantage that even small remainders of non-polymerized products are readily removed by evaporation. * * *".

It is clear from these quotations that Wulff et al. recognized the desirability of securing a product which should be completely polymerized.

In the first quotation above given they state in effect that the purity of the initial material should be as high as possible for the reason that the presence of 2 to 3 per cent of benzene, xylene or ethyl benzene in the *final product* is undesirable; and in the second quotation they state that the remainders of non-polymerized products resulting from the process are readily removed by evaporation.

Appellant introduced into the record certain affidavits respecting tests of the process disclosed by Wulff et al., and it is therein stated that the final product contained less than 97 per cent of polystyrene. The first of these affidavits states:

"That said experiments show that even after three successive extrusions the volatile content of the polystyrene material is reduced only by about 1% and that the volatile content of the extruded material is still high enough to cause frosting of molded articles made therefrom.

"That when similar polystyrene material is subjected to mechanical working, at a temperature of about 125-130° C., the volatile content is reduced to less than 3% and articles molded therefrom exhibit no frosting even after six months."

It is clear from this affidavit that the improved result secured by appellant was due solely to the mechanical working of the polystyrene material, and for this contribution to the art the board allowed claims 4, 6, 11 and 12, and, as hereinbefore stated, we hold that claim 3 should also be allowed.

■ Because appellant has discovered one method of securing an improved result it does not follow that he should be allowed claims that would cover all methods, such as claims 1, 2 and 5.

In the case of In re Stack 87 F.2d 210, 212, 24 C.C.P.A., Patents, 836, we said:

" * * * Appellant's contention is to the effect that since he is the first person producing a silver-tin base dental alloy having the characteristics set forth in the claims, he is entitled to all methods (even though claimed only in terms defining the desired results) for producing the same. This position is, of course, without merit. If his alloy is new and useful and if it required inventive genius to produce it, under ordinary circumstances he would be entitled to a patent on the article. He also would be entitled to a patent for a new, useful, and inventive method of producing the article. But some one else who discovers a different method · inventive in character might also be entitled to a patent.

* * *

"Although an applicant may be the first to produce an article involving a chemical treatment in its production, he is not entitled to a monopoly of all methods in which chemical treatment may be involved, and, under such circumstances, the term 'chemical treatment' does not lend patentability to a claim which does not define what constitutes the chemical treatment."

■ We are in agreement with the decisions of the Patent Office tribunals with respect to claims 1, 2 and 5. We are not satisfied, notwithstanding the affidavits in the record, that one skilled in the art, following the teachings of Wulff et al., would not produce a polymerized styrene containing less than 3 per cent of methanol soluble components.

Claims 7, · 8, 9 and 10 are composition claims. With respect to these claims the board in its decision stated: "Claims 7, 8, 9 and 10 are directed to the composition and drawn in the broadest terms so as to cover the desirable product irrespective of the method used in producing it. Undoubtedly others had conceived of a pure polymerized styrene and while that is probably impossible of attainment, still they hoped to approach as near to it as possible. Wulff says that the polymerized product should be as pure as possible and while it may be that he did not get as pure a product as is produced by appellant, still, the difference,

at best, is merely one of degree. For that reason it is held that claims 7, 8, 9 and 10 are unpatentable over the Wulff patent."

Appellant's counsel challenge the statement of the board that the Wulff et al. patent states "that the polymerized product should be as pure as possible," contending that the patent really states that the purity of the *initial material* should be as high as possible. Appellant's counsel are literally correct in this, but Wulff et al. state in effect as their reason for selecting initial material as pure as possible that the *final product* should not contain more than 2 to 3 per cent of the materials named by them, and they also state that the remainders of non-polymerized products "are readily removed by evaporation." Upon this latter statement a product would be secured reading clearly upon appellant's composition claims. We find nothing in the record negativing the last above quoted statement of Wulff et al.

In the foregoing we have assumed that the proportion of less than 3 per cent of methanol soluble material is a critical proportion, in view of the object that appellant has in view; and hence any different proportion disclosed by the reference is not merely a matter of degree; but in our opinion Wulff et al. do teach that the final product should be at least 97 per cent pure polystyrene, which would exclude any product having more than 3 per cent of methanol soluble material.

With respect to the statements in claims 8 and 10 that the product is characterized by being moldable to articles free from frosting for at least six months after molding, we would observe that this is not a positive element in the claims, and presumable a composition disclosed by Wulff et al., containing less than 3 per cent of methanol soluble material, would have the same characteristic.

For the reasons stated herein, the decision of the Board of Appeals is affirmed as to claims 1, 2, 5, and 7 to 10, inclusive, and is reversed as to claim 3.

Modified.