**In re Michael Ben GRAVES.**

**No. 95–1199.**

United States Court of Appeals, Federal Circuit.

Nov. 9, 1995.

Rehearing Denied; Suggestion for Rehearing In Banc Declined Dec. 14, 1995.

Michael B. Graves, Los Angeles, California, submitted pro se.

Nancy J. Linck, Solicitor, Office of the Solicitor, of Arlington, Virginia, submitted for respondent. With her on the brief were Albin F. Drost, Deputy Solicitor, James T. Carmichael and Joseph G. Piccolo, Associate Solicitor.

Before RICH, Circuit Judge, MICHEL, Circuit Judge, and NIES, Senior Circuit Judge.*

RICH, Circuit Judge.

Michael Ben Graves (applicant) appeals from the 30 September 1994 and the 20 January 1995 decisions of the United States Patent and Trademark Office Board of Patent Appeals and Interferences (Board) (Appeal No. 93–4456). In its 20 January decision, the Board denied the applicant's request that the Board change its 30 September decision. In its 30 September decision, the Board affirmed the examiner's final re-

---

* Judge Nies assumed senior status on 1 November 1995.

jection of claims 4–6 of application Serial No. 07/870,452, entitled "Power Interconnect Tester." The Board affirmed the rejection of claims 4 and 6 under 35 U.S.C. § 102(b) as being anticipated by Rockwell et al., U.S. Patent No. 4,399,400 (Rockwell), and affirmed the rejection of claim 5 under section 102(b) as being anticipated by Coben, U.S. Patent No. 4,814,693 (Coben). We affirm.

## BACKGROUND

The claimed invention is a device and method for testing electrical systems by applying signals, checking for the continued presence of those applied signals, identifying points or wires that are shorted, recording such data, and comparing that data to previously recorded data to check for the presence of errors. Independent claims 4, 5, and 6 are the only claims remaining in the application.

We must resolve two primary issues: first, whether we have subject matter jurisdiction; second, since we conclude that we do have jurisdiction, whether the Board correctly upheld the examiner's rejections.

The applicant appealed the examiner's final rejection of claims 4, 5, and 6 to the Board under 35 U.S.C. § 134.[1] The Board issued its first decision on 30 September 1994, affirming the examiner's final rejection of all three claims. After the Board entered its first decision, the applicant, pursuant to 37 C.F.R. § 1.197(b),[2] filed with the Board a request for reconsideration of the 30 September decision. On 4 January 1995, *before* the Board entered its decision on the applicant's request for reconsideration, the applicant filed with the Commissioner of Patents and Trademarks (Commissioner) a notice of appeal to this court. On 20 January 1995, the Board entered its reconsideration decision, which denied the applicant's request to modify its 30 September decision.

## DISCUSSION

### I

### Jurisdiction

Since the applicant filed a notice of appeal after filing a Rule 197(b) request for reconsideration with the Board and before the Board had rendered a decision on that request, we must decide two related jurisdictional issues: first, whether the Board had jurisdiction to render its decision on the applicant's request for reconsideration *after* the applicant had filed the notice of appeal, and second, whether we have jurisdiction to hear the merits of this appeal. The Commissioner's brief concedes that we *may* have jurisdiction.

### A. The Board's Jurisdiction

■ In *In re Allen*, 115 F.2d 936, 28 C.C.P.A. 792 (CCPA 1940),[3] one of this court's predecessors concluded "that upon the filing of a notice of appeal *from an appealable decision,* and reasons of appeal,[4] with the commissioner, the subject matter of the appeal is transferred to this court, and that thereafter until the appeal has been disposed of by us the tribunals of the Patent Office have no jurisdiction to grant a motion for reconsideration of the decision appealed from, even though such motion was made before the filing of such notice of appeal." *Id.* at 941, 28 C.C.P.A. at 798 (emphasis

---

1. All cites to the *United States Code* are to the 1988 version. Section 134 provides as follows: An applicant for a patent, any of whose claims has been twice rejected, may appeal from the decision of the primary examiner to the Board of Patent Appeals and Interferences, having once paid the fee for such appeal.

2. All cites to the *Code of Federal Regulations* are to the 1994 version. Section 1.197(b) provides in pertinent part as follows: A single request for reconsideration or modification of the decision may be made if filed within one month from the date of the original decision, unless the original decision is so modified by the decision on reconsideration as

to become, in effect, a new decision, and the Board of Patent Appeals and Interferences so states.

3. The Federal Circuit has adopted as precedent the decisions of the Court of Customs and Patent Appeals. *See South Corp. v. United States,* 690 F.2d 1368, 1370, 1 Fed.Cir. (T)1, 1 (1982) (in banc).

4. Under the statute existing in 1940, a notice of appeal had to be accompanied by "reasons of appeal." The latter requirement no longer exists.

added) (footnote added). *But cf. Loshbough v. Allen*, 359 F.2d 910, 912, 149 USPQ 633, 634–35 (CCPA 1966) (discussing some functions that the Board may perform despite the applicant's having filed a notice of appeal and overruling *In re Allen* to the extent it would prohibit the Board from performing those functions); *In re Grier*, 342 F.2d 120, 123, 144 USPQ 654, 657 (CCPA 1965) (after an applicant has filed a notice of appeal in an ex parte case, the Board still may "exercise a purely ministerial function in its administrative capacity"). Thus, if the Board's 30 September 1994 decision was an "appealable decision" at the time the applicant filed his notice of appeal, that filing may have vested this court with jurisdiction and divested the Board of jurisdiction to render its decision on the then-pending Rule 197(b) reconsideration request. Under the facts of the present case, however, the applicant's mere filing of the notice of appeal did not instantly vest jurisdiction in this court.

On 4 January 1995, when the applicant filed the notice of appeal to this court, more than two months had passed since the Board had issued its 30 September 1994 decision. Thus, the notice was too late if based upon the 30 September decision.[5] In other words, on 4 January, the 30 September decision was no longer an "appealable decision" in the sense contemplated in *In re Allen*. Consequently, the applicant's mere filing of the notice while his Rule 197(b) request for reconsideration was pending did not deprive the Board of jurisdiction to further consider the request since no *appealable* Board decision existed at the time the applicant filed the notice. We conclude that the Board had jurisdiction to enter its reconsideration decision on 20 January 1995.

## B. The Federal Circuit's Jurisdiction

We next must determine whether the applicant's 4 January notice of appeal was effective to give this court jurisdiction. We always have jurisdiction to determine our jurisdiction. *See In re Alappat*, 33 F.3d 1526, 1530, 31 USPQ2d 1545, 1546 (Fed.Cir. 1994) (in banc) (discussing this court's duty to ensure it has jurisdiction). The issue here concerns whether the applicant filed his notice of appeal *too early* to be effective. The deadline for filing a notice of appeal based upon that 20 January decision *expired* 21 March 1995, i.e., two months and one day after 20 January. Thus, the applicant filed the notice of appeal not only before the deadline, but also more than two weeks *before* the Board rendered the only decision on which the appeal could be based under the facts of this case.

Timeliness of an appeal of an agency order to this court is governed by Federal Rule of Appellate Procedure (FRAP) 15(a), which merely states that the appeal must be filed "within the time prescribed by law." Fed. R.App.P. 15(a). The applicable section of the *Code of Federal Regulations*, section 1.304(a)(1),[6] is also unclear as to the date *before which* an applicant may not file an effective notice of appeal to this court. In the absence of a clear legislative command,

---

5. 37 C.F.R. § 1.304(a)(1), which governs the time for filing an appeal, provides in pertinent part as follows:

> The time for filing the notice of appeal to the U.S. Court of Appeals for the Federal Circuit (§ 1.302) ... is two months from the date of the decision of the Board of Patent Appeals and Interferences. If a request for consideration [sic, reconsideration] or modification of the decision is filed within the time period provided under § 1.197(b) ..., the time for filing an appeal ... shall expire two months after action on the request.

The Commissioner had not extended the two-month period. *See* 37 C.F.R. § 1.183 (in an extraordinary situation, the Commissioner may suspend or waive any requirement of the rules not required by statute); *Eckey v. Watson*, 268 F.2d 891, 892, 122 USPQ 5, 5 (D.C.Cir.1959) (per curiam) (It is a proper exercise of the Commissioner's power to suspend or waive the time limit of § 1.304.); *In re Reese*, 359 F.2d 462, 463 n. 2, 149 USPQ 362, 363 n. 2 (CCPA) (citing *Eckey*) (dictum), *cert. denied*, 385 U.S. 899, 87 S.Ct. 203, 17 L.Ed.2d 130 (1966). Patent and Trademark Office (PTO) Rule 304(a)(1) finds its statutory authority at 35 U.S.C. § 142, which provides as follows:

> When an appeal is taken to the United States Court of Appeals for the Federal Circuit, the appellant shall file in the Patent and Trademark Office a written notice of appeal directed to the Commissioner, within such time after the date of the decision from which the appeal is taken as the Commissioner prescribes, but in no case less than 60 days after that date.

6. See *supra* note 5 for the text of § 1.304(a)(1).

we will not, on the facts of this case, deny the applicant the right to appeal a final Board decision to this court.

When an applicant files a notice of appeal *after* filing a Rule 197(b) request and *before* the Board has rendered its decision in response to that request, *and* when no appealable decision exists when the applicant files the notice of appeal, the mere filing of the notice does not deprive the Board of jurisdiction to render its reconsideration decision and the applicant has filed the notice "within the time prescribed by law." We, however, cannot exercise jurisdiction over the appeal before the Board enters its reconsideration decision on the Rule 197(b) request.

The notice of appeal in the instant case ripened into an effective appeal on 20 January 1995 upon the disposition of the applicant's request for reconsideration, wherein the Board refused to modify its original opinion. Our jurisdiction to hear the appeal was, in effect, suspended until the Board acted upon the Rule 197(b) request for reconsideration and rendered its reconsideration decision.[7] We conclude that, under the facts of this case, we have jurisdiction to consider the merits of this appeal.

## II

### The Rejections Under 35 U.S.C. § 102(b)

■ Anticipation under section 102(b) is a factual determination, which we review under the clearly erroneous standard. *See, e.g., In re Baxter Travenol Labs.,* 952 F.2d 388, 390, 21 USPQ2d 1281, 1283 (Fed.Cir.1991) (citing *In re Bond,* 910 F.2d 831, 833, 15 USPQ2d 1566, 1567 (Fed.Cir.1990)). What a prior art reference teaches is also a question of fact that we review under the clearly erroneous standard. *See, e.g., In re Napier,*

55 F.3d 610, 613, 34 USPQ2d 1782, 1784 (Fed.Cir.1995) (citing *In re Beattie,* 974 F.2d 1309, 1311, 24 USPQ2d 1040, 1041 (Fed.Cir. 1992)). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

### A. The Rejection of Claims 4 and 6

■ Our first task on the merits is to decide whether the PTO's rejection of claims 4 and 6 under section 102(b), as being anticipated by Rockwell, was proper. Claims 4 and 6 read as follows:

4. A test system and method for testing the integrity of the interconnections of electronic systems by testing for continuity from each point on the interconnect of an electronic system under test simultaneously to multiple selected power, ground and other connection points or wires, comprising the steps of:

(a) controllably applying a test signal sequencially [sic] to each point on the interconnect of the electronic system under test;

(b) simultaneously monitoring the selected multiple connection points or wires for presence of the test signal which is applied sequencially [sic] to each point on the interconnect of the system under test;

(c) identifying each interconnect point and selected multiple connection point or wire which are connected or shorted together; and

(d) comparing test data to records of the system under test for errors.

---

7. Our holding that we may consider the applicant's notice of appeal to have been suspended until the Board had rendered its reconsideration decision finds support by analogy in the treatment afforded by FRAP 4(a)(4). Although FRAP 4(a)(4) does not apply in the instant appeal from an agency order (*see* FRAP 20), it addresses analogous situations in appeals from district court decisions. An applicant's Rule 197(b) request for reconsideration is akin to the motions listed under FRAP 4(a)(4), particularly those listed under FRAP 4(a)(4)(B) and (C). The com-

mentary concerning the 1993 amendment to FRAP 4(a)(4) states, in pertinent part, as follows:

The amendment provides that a notice of appeal filed before the disposition of a specified posttrial motion will become effective upon disposition of the motion. A notice filed before the filing of one of the specified motions or after the filing of a motion but before disposition of the motion is, in effect, suspended until the motion is disposed of, whereupon, the previously filed notice effectively places jurisdiction in the court of appeals.

6. An automatic test system for testing the integrity of the interconnections of electronic systems versus selected multiple connection points or wires using a continuity test technique, comprising:

(a) a testpoint select and control circuit portion for controllably applying a test signal sequencially [sic] to single points on the interconnect of an electronic system under test;

(b) a processor interface circuit portion for interfacing a processor to both the testpoint select and control circuit and the multiple selected connection points or wires;

(c) a processor portion for performing automatic testing;

(d) a computer program portion for system operation and control[;]

(e) a recording device portion such as a printer for data collection; and

(f) a power source portion for supplying electrical power to said testpoint select and control circuit portion, the processor interface circuit portion, the processor portion and the recording device portion.

The Board found that Rockwell teaches continuity testing of wire harnesses and using scanners to apply test signals and to monitor their presence. According to the Board, Rockwell teaches obtaining test data and comparing it to known good data. The Board also found that Rockwell describes an interface adapter, a processor unit, a read-only memory, a recorder, a frequency shifted key modulator, and a power supply. In view of the above, the Board concluded that Rockwell meets all of the limitations of claims 4 and 6 and thereby anticipates these claims. We agree and accordingly affirm the rejection.

The dissent expresses the view that Rockwell fails to teach element (b) of claim 4. This raises two issues: proper construction of claim 4 and what Rockwell teaches.

■ As construed by the dissent, element (b) requires the simultaneous monitoring of each of multiple connection points or wires (i.e., each of multiple output points). The Board, on the other hand, construed element (b) to require the simultaneous monitoring of input and output points, but not necessarily the simultaneous monitoring of an input point and multiple output points. We conclude that the Board properly gave claim 4 as broad a reading as possible not inconsistent with the applicant's disclosure. See, e.g., De-George v. Bernier, 768 F.2d 1318, 226 USPQ 758 (Fed.Cir.1985) ("Claims during prosecution … are also given the broadest reasonable interpretation possible, consistent with the specification." Id. at 1322 n. 2, 226 USPQ at 761 n. 2 (citing In re Yamamoto, 740 F.2d 1569, 222 USPQ 934 (Fed.Cir. 1984))); In re Sneed, 710 F.2d 1544, 1548, 218 USPQ 385, 388 (Fed.Cir.1983).

■ Even assuming, however, that the dissent's construction of claim 4 is correct, Rockwell nevertheless anticipates claim 4, even if it does not specifically disclose simultaneous monitoring of the output points, if simultaneous or parallel monitoring is within the knowledge of a skilled artisan. See, e.g., In re LeGrice, 301 F.2d 929, 133 USPQ 365 (CCPA 1962) (A reference anticipates a claim if it discloses the claimed invention "such that a skilled artisan could take its teachings in *combination with his own knowledge of the particular art and be in possession of the invention.*" Id. at 936, 133 USPQ at 372 (emphasis in original)); In re Donohue, 766 F.2d 531, 533, 226 USPQ 619, 621 (Fed.Cir. 1985) (same) (citing In re LeGrice, 301 F.2d at 939, 133 USPQ at 373–74). Even the applicant, in item 12 of his request for reconsideration of the Board's 30 September 1994 decision, stated that one with knowledge of "basic electronics and simple logic" would understand the difference between the operation of the series circuit of Rockwell and the parallel circuit of the claimed invention. Thus, even under the dissent's construction of claim 4, the Board correctly held that a skilled artisan could take Rockwell's teachings in combination with his own knowledge and be in possession of the device of applicant's claim 4.

In summary, we find that the Board's claim construction is reasonable, and its determination of what Rockwell teaches is not clearly erroneous. We cannot say, therefore, that the Board's conclusion that Rockwell

anticipates claims 4 and 6 is clearly erroneous.

### B. The Rejection of Claim 5

■ Next, we must decide whether the PTO's rejection of claim 5 under section 102(b), as being anticipated by Coben, was proper. Claim 5 reads as follows:

> 5. An electronic continuity test equipment group, comprising:
>
> (a) means for controllably applying a test signal sequencially [sic] to single points on the interconnect of an electronic system under test;
>
> (b) means for simultaneously indicating the presence of a test signal on any selected multiple connection points or wires caused by applying said test signal to single points on the interconnect of an electronic system under test;
>
> and
>
> (c) means for supplying electrical power to portions of said test equipment group.

The Board found that Coben teaches testing of short circuits among electrical contact points by using electronic continuity test equipment to apply test signals to the electrical cable under test to determine "all" of the end-to-end connections within that cable, a battery, and light emitting diodes. In view of the above, the Board found that Coben meets all of the limitations of claim 5. Again, we agree and affirm the rejection.

### III

### Conclusion

For the reasons discussed above, we hold that the applicant timely filed his appeal, giving us jurisdiction to consider the merits of his appeal. Upon review of the merits, we are not left with a definite and firm conviction that the Board committed a mistake in sustaining the rejection of claims 4 and 6 under 35 U.S.C. § 102(b), as being anticipated by Rockwell. Nor are we left with a definite and firm conviction that the Board committed a mistake in sustaining the rejection of claim 5 under 35 U.S.C. § 102(b), as anticipated by Coben. We have carefully considered the applicant's other arguments beyond those specifically related to the section 102(b) rejections and find no reversible error in the Board's decision. Accordingly, we affirm.

### AFFIRMED.

NIES, Senior Circuit Judge, dissenting-in-part.

I would reverse the Board's decision that claim 4 is anticipated by Rockwell. Claim 4 requires "simultaneously monitoring the selected multiple connection points or wires for presence of the test signal." I construe that claim language to mean that multiple points must be monitored for the test signal, a single test signal, at the same time—i.e., "simultaneously." The Board concluded that Rockwell taught this claim element "[s]ince continuity testing requires that the input and output points be simultaneously selected for application of an input potential and an output 'ground' potential." Under this construction, with which the majority apparently agrees, the word "simultaneously" is rendered superfluous. It is axiomatic that, in a continuity test of a wire, one must monitor the connection point at the same time the test signal is applied.

Regarding the construction of claim 4, the majority states:

> The Board, on the other hand, construed element (b) to require the simultaneous monitoring of input and output points, but not necessarily the simultaneous monitoring of an input point and multiple output points. We conclude that the Board properly gave claim 4 as broad a reading as possible not inconsistent with the applicant's disclosure.

While I agree with the majority's restatement of the Board's construction, that construction is inconsistent with plain language of the specification. Graves' specification clearly states, in several different places, the "one-to-many" concept of applying a single test signal and simultaneously monitoring multiple points for the presence of the test signal. For example, the specification recites:

> No prior test systems or methods utilyze [sic] the present invention's technique for

testing the integrity of an electronic system's interconnections versus selected multiple connection points or wires. *The technique comprises applying a test signal sequencially [sic] while simultaneously monitoring all the selected multiple points for the presence of said test signal, thus indicating continuity to the single point under test.*

\*     \*     \*     \*     \*     \*

The present invention tests for possible miswires, missing wires and shorts from each point on the interconnect simultaneously to selected multiple power, ground, processor control and other connection points or wires.

\*     \*     \*     \*     \*     \*

The present invention applies a test signal sequencially [sic] to single points on the interconnect of an electronic system unit under test while simultaneously monitoring the different selected multiple connection points or wires for the presence of said test signal. The presence of such signal indicates continuity between the (multiple point) connection point(s) or wire(s) to the single interconnect point under test.

This language squares with claim 4, which recites the steps of (1) *controllably applying a test signal sequentially to each test point*, and (2) simultaneously monitoring the selected multiple connections points for the presence of the test signal. As such, I can only conclude that both the Board and the majority have utterly failed to give claim 4 "as broad a reading as possible not inconsistent with the applicant's disclosure." Indeed, the majority's claim interpretation is indisputably inconsistent with the unambiguous language of the specification.

The Rockwell reference does not anticipate claim 4 because it does not teach monitoring multiple points simultaneously. Rather, the Rockwell reference teaches checking continu-

ity of a wire harness from a single input point to a single output point. Thus, while the Rockwell reference teaches monitoring multiple points, it teaches doing so one wire at a time, not testing multiple wires simultaneously.

Remarkably, the majority opts to overlook this fatal shortfall and concludes that "Rockwell meets all of the limitations" of claim 4. In support of its reasoning, the majority relies on a statement made by Graves in his request for reconsideration:

> Even the applicant, in item 12 of his request for reconsideration of the Board's 30 September 1994 decision, stated that one with knowledge of "basic electronics and simple logic" would understand the difference between the operation of the series circuit of Rockwell and the parallel circuit of the claimed invention. Thus, even under the dissent's construction of claim 4, the Board correctly held that a skilled artisan could take Rockwell's teachings in combination with his own knowledge and be in possession of the device of applicant's claim 4.

While basic circuit knowledge encompasses the difference between a series circuit and a parallel circuit, the majority concludes that a skilled artisan (who undoubtedly would have that basic knowledge) would, after reading Rockwell, *ipso facto* be in possession of the claimed invention at the time the invention was made. Doing so is purely hindsight evaluation of the claims, and improperly minimizes Graves' invention. I cannot subscribe to such action.