**ROCKWELL INTERNATIONAL CORPORATION and Rockwell Science Center, Inc., Plaintiffs,**

v.

**SDL, INC., Defendant.**

**No. C95–1729 MHP.**

United States District Court, N.D. California.

June 29, 2000.

Nancy J. Greenen, Mark E. Reagan, Foley & Lardner, San Francisco, CA, Richard S. Florsheim, Foley & Lardner, Milwaukee, WI, Larry L. Shatzer II, Foley & Lardner, Washington, DC, for Plaintiff.

Michael M. Carlson, Morrison & Foerster, Palo Alto, CA, for Defendant.

### MEMORANDUM AND ORDER

PATEL, Chief Judge.

On May 22, 1995, plaintiffs Rockwell International Corporation and Rockwell Science Center, Inc. (collectively "Rockwell") filed this action against SDL, Inc. ("SDL") alleging infringement of United States Patent Number 4,368,098 ("the '098 patent"). Rockwell now moves for partial summary judgment that claims 19, 30, 50, 56, and 72 are not invalid under 35 U.S.C. section 102. On a cross-motion for summary judgment, SDL seeks a ruling that, except for the elements identified by Rockwell in its present motion, all of the elements of claims 19, 30, 50, 56, and 72 are located in two prior art references.

### BACKGROUND

#### I. Scientific Overview

The '098 patent claims a process for making "III–V semiconductors." This process opened the door to significant improvements in opto-electronic, photonic, and laser technologies. The process involves "chemical vapor deposition," in which a thin film of a material is grown by transporting the constituent components of that material in a gaseous state and depositing them on a surface called a "substrate."

The '098 patent discloses a special type of chemical vapor deposition known as metal organic chemical vapor deposition ("MOCVD"). MOCVD combines specific gaseous reactants—one containing an element from Group III and one containing an element from Group V of the Periodic Table of Elements. These reactants are heated until "pyrolysis" takes place and the reactants break down into their constituent chemical parts. The released Group III and Group V atoms deposit on a substrate to form a III–V semiconductor film.

The MOCVD process of the '098 patent grows "epitaxial" III–V semiconductors. Epitaxial III–V semiconductors are "single crystal" films. A single crystal solid, such as a diamond, is distinguished by the regular, repeated stacking pattern of its atoms.

MOCVD as taught by the '098 patent takes place in a reactor. The substrate sits on a pedestal within the reactor, and pyrolysis occurs at the substrate surface. The claims of the '098 patent require the use of a "cold-wall reactor." The Federal Circuit affirmed the Claims Court's holding that a cold-wall reactor is defined as a reactor in which heat is applied at the substrate site and the walls of the reactor are kept significantly cooler than the substrate. *See Rockwell Int'l Corp. v. United States*, 147 F.3d 1358, 1363 (Fed.Cir.1998) (hereinafter "*Rockwell II* ").

#### II. The '098 Patent and Prior MOCVD Processes

Plaintiff Rockwell's '098 patent was developed by Dr. Harold Manasevit in a Rockwell laboratory in 1967. Manasevit filed a patent application on February 13,

1968. The '098 patent ultimately issued on January 11, 1983. It has since expired.

Among the inventors who developed MOCVD processes before Manasevit were Thomas R. Scott and Walter Miederer. In 1957, Scott obtained patents from the United Kingdom and Japan that disclose the pyrolysis of a Group III alkyl (i.e.triethylindium) and a Group V hydride (i.e.stibine) in a cold wall reactor. *See* U.K.Patent No. 778,383; Japanese Patent 32–384 (together, "the Scott patent"). Miederer procured a U.S. patent in 1965. *See* U.S.Patent No. 3,226,270 ("the Miederer patent"). The Miederer patent teaches that pyrolysis of a Group III alkyl (i.e. triethylindium or trimethylgallium) and a Group V reactant such as arsine will produce a III–V semiconductor.

III. *Procedural History*

Rockwell brought an action in the United States Court of Federal Claims against the United States on August 30, 1993, alleging infringement of several of its '098 patent claims and identifying a number of government contractors, including SDL, who purportedly participated in the infringement. In May 1995, Rockwell sued SDL for infringement of the same patent in this court. SDL immediately intervened in the Claims Court action as a third-party defendant. This action was suspended pending disposition of the Claims Court case.

The Claims Court decided to try Rockwell's action in three phases. *See Rockwell Int'l Corp. v. United States,* 37 Fed. Cl. 478, 480–81 (Fed.Cl.1997) (hereinafter "*Rockwell I* "). In the first phase, the court addressed claim construction and validity. The Claims Court construed certain disputed terms in Rockwell's favor. Rockwell asked the Claims Court to rule on summary judgment that claims 1 and 3 were not invalid. Defendants filed cross motions that these claims were anticipated under 35 U.S.C. section 102 and obvious under 35 U.S.C. section 103. The Claims Court granted summary judgment on obviousness. However, the court found that material issues of fact precluded summary judgment on anticipation. *See Rockwell I,* 37 Fed.Cl. at 502. The Federal Circuit reversed in part and affirmed in part. *See Rockwell II,* 147 F.3d at 1367. It reversed the obviousness ruling, finding that genuine issues about the content of the prior art precluded a determination of obviousness on summary judgment. *See id.* at 1365. The Federal Circuit upheld the lower court's holdings on claim construction and anticipation.

Shortly after the case was remanded, the United States settled with Rockwell, agreeing to the entry of judgment in favor of Rockwell. This settlement deprived the Claims Court of jurisdiction over the dispute between Rockwell and SDL. On January 13, 1999, pursuant to the parties' request, this court lifted the stay and reopened the action here.

In a February 9, 2000 order, this court granted Rockwell's motions for partial summary judgment that the work of Dr. Robert Stearns is not prior art pursuant to 35 U.S.C. sections 102 and 103 and that SDL has infringed claims 19, 30, 35, 36, 50, 56, 57, and 72 of the '098 patent. Now before the court is Rockwell's motion for partial summary judgment that claims 19, 30, 50, 56, and 72 are not anticipated under 35 U.S.C. section 102. Also before the court is SDL's cross motion for summary adjudication that, with the exception of the elements identified by Rockwell in its present motion, the Scott and Miederer patents encompass all of the elements of claims 19, 30, 50, 56, and 72.

*LEGAL STANDARD*

Under Federal Rule of Civil Procedure 56, summary judgment shall be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial ... since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265

(1986); *see also T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987).

The moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings, and by [its] own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (citations omitted); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). The moving party discharges its burden by showing that the nonmoving party has not disclosed the existence of any "significant probative evidence tending to support the complaint." *First Nat. Bank of Ariz. v. Cities Service Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968).

The court's function on a motion for summary judgment is not to make credibility determinations. *See Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. The inferences to be drawn from the facts must be viewed in a light most favorable to the party opposing the motion. *See T.W. Elec. Serv.,* 809 F.2d at 631.

The Federal Circuit has repeatedly held that summary judgment is as appropriate in patent cases as in any other type of case. *See, e.g., Paragon Podiatry Laboratory, Inc. v. KLM Laboratories, Inc.,* 984 F.2d 1182, 1190 (Fed.Cir.1993); *Hodosh v.*

*Block Drug Co.,* 786 F.2d 1136, 1141 (Fed. Cir.1986).

*DISCUSSION*

I. *Law on Anticipation*

A patent is presumed to be valid. *See* 35 U.S.C. § 282. In order to establish invalidity, the attacker bears the burden of proof by clear and convincing evidence. *See American Hoist & Derrick Co. v. Sowa & Sons, Inc.,* 725 F.2d 1350, 1360 (Fed.Cir.1984).

A patent is invalid under 35 U.S.C. section 102 if it is anticipated by a prior art reference.[1] An anticipation analysis involves a three-part inquiry: (1) whether the challenging reference is prior art; (2) whether the prior art is enabling (i.e. in the possession of the public); and (3) whether the doctrine of identity applies. *See Rockwell I,* 37 Fed.Cl. at 503. Here, the anticipation issue is limited to the Scott and Miederer patents, both of which undisputedly constitute prior art. Prior art patent references are presumed to be enabled. *See In re Sasse,* 629 F.2d 675, 681 (C.C.P.A.1980). Thus, the only question the court need resolve is whether the doctrine of identity applies.

Under the doctrine of identity, "[a]nticipation requires the presence in a single prior art disclosure of all elements of a claimed invention arranged as in the claim." *Structural Rubber Products Co. v. Park Rubber Co.,* 749 F.2d 707, 716 (Fed. Cir.1984). In order to anticipate, the prior art reference must be identical to the claim in question. *See Scripps Clinic & Research Found. v. Genentech, Inc.,* 927 F.2d 1565, 1576 (Fed.Cir.1991). If a prior art reference does not expressly set forth a particular claim element, however, that

---

1. Section 102 provides in pertinent part:

    A person shall be entitled to a patent unless—

    (a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or

    (b) the invention was patented or described in a printed publication in this or a foreign

country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States, or

    (g) before the applicant's invention thereof the invention was made in this country by another who had not abandoned, suppressed, or concealed it. 35 U.S.C. § 102.

reference still may anticipate if the missing element is "inherent" in its disclosure. *See In re Robertson,* 169 F.3d 743, 745 (Fed.Cir.1999). The resolution of this motion turns on the meaning of "inherent."

■ The parties in the present action draw from apparently conflicting Federal Circuit precedent in disputing when a missing claim element is "inherent." Rockwell argues that a missing element is inherently disclosed only if a person of ordinary skill in the art would recognize that the element is necessarily practiced by the reference. SDL contends that a missing element is inherently disclosed if it was within the common knowledge of a skilled artisan at the time the subject of the patent-in-suit was invented.

Rockwell draws from the prevailing line of Federal Circuit precedent on what constitutes an "inherent" disclosure. In *Continental Can Co. v. Monsanto Co.,* 948 F.2d 1264 (Fed.Cir.1991), the court ruled that "[i]nherency . . . may not be established by probabilities or possibilities" but must be "necessarily present in the thing described in the reference" as viewed by persons of ordinary skill in the art. *Id.* at 1268, 1269 (citations omitted). It further clarified that an element is inherent if it is a "natural result flowing from the operation as taught." *Id.* at 1269. The Federal Circuit recently cited this portion of *Continental* with approval. *See Finnigan Corp. v. International Trade Comm'n,* 180 F.3d 1354, 1365 (Fed.Cir.1999) (noting that the *Continental* court "aptly explained . . . [t]he operation of inherency in anticipation" and excerpting a substantial quote regarding "inherency" from *Continental* ).

The *Continental* court's interpretation of "inherent" squares with the overwhelming majority of Federal Circuit cases addressing the subject. For example, in *Scripps,* the Federal Circuit indicated that extrinsic evidence is "of limited scope and probative value [in an anticipation analysis], for a finding of anticipation requires that all aspects of the claimed invention were already described in a single reference." *Scripps,* 927 F.2d at 1576. The court further pronounced that extrinsic evidence may only be used "to educate the decision-maker to what the reference meant to persons of ordinary skill in the field of the invention, *not to fill gaps in the reference." Id.* (emphasis added). Moreover, in *Structural Rubber,* the court rejected the very contention that SDL advances here. *See Structural Rubber,* 749 F.2d at 716. The defendant in that action argued that for anticipation purposes, "missing elements may be supplied by the knowledge of one skilled in the art." *Id.* In refuting the defendant's position, the court stated that the question of whether " 'one of ordinary skill may in reliance on the prior art complete the work required for the invention' . . . . relate[s] to obviousness, not anticipation." *Id.* (quoting *Connell v. Sears, Roebuck & Co.,* 722 F.2d 1542, 1548 (Fed.Cir.1983) (internal quotations omitted)).

SDL hangs its opposition on one Federal Circuit case that appears to conflict with the reigning precedent. In *In re Graves,* 69 F.3d 1147 (Fed.Cir.1995), the court stated that a prior art reference anticipates if it discloses the claimed invention " 'such that a skilled artisan could take its teachings in combination with his own knowledge of the particular art and be in possession of the invention.' " *Id.* at 1152 (quoting *In re LeGrice,* 49 C.C.P.A. 1124, 301 F.2d 929, 936 (1962); *In re Donohue,* 766 F.2d 531, 533 (Fed.Cir.1985)).[2] Rockwell makes several alternative arguments

---

**2.** Both parties to this action agree that *Graves* is inconsistent with *Continental, Scripps,* and *Structural Rubber.* The court is not so sure. In *Graves,* the Federal Circuit affirmed a decision of the United States Patent and Trademark Office Board of Patent Appeals and Interferences, in which the Board found that a single prior art reference expressly met all of the elements of claims 1 and 4 of the patent-in-suit. *See In re Graves,* 69 F.3d 1147, 1152 (Fed.Cir.1995). The majority proceeded to address the dissent's contention that the prior art reference failed to teach element (b) of claim 4. The majority first asserted that the Board properly gave claim 4 a broad reading and that element (b) was therefore expressly disclosed in the prior art reference. The majority then concluded that, even if the dis-

for why this court should decline to adopt a definition of "inherent" based on *Graves*.[3] However, the court need go no further than an acknowledgment that where there is an "apparent conflict in statements of Federal Circuit law, the earlier statement prevails unless or until it has been overruled in banc [sic]." *YBM Magnex, Inc. v. International Trade Comm'n*, 145 F.3d 1317, 1319 n. 2 (Fed. Cir.1998). As SDL concedes, the *Structural Rubber* court reached a holding in 1984 that appears to be contrary to the pertinent excerpt from the 1995 *Graves* decision. On December 14, 1995, the Federal Circuit declined a suggestion for a rehearing of *Graves* en banc. Thus, as clearly stated in *Structural Rubber*, the common knowledge of a skilled artisan cannot be used to add an inherent element into a patent claim for the purpose of a section 102 anticipation analysis. Rather, the Federal Circuit case law dictates that an absent element is inherently disclosed only if a skilled artisan would recognize that the element is necessarily practiced by the reference.

## II. *The Contested Prior Art*

According to Rockwell, at least one element in every disputed '098 patent claim is absent from both the Scott and Miederer patents.[4] SDL responds that the Scott and Miederer patents each anticipate the '098 patent because their allegedly missing elements were within the common knowledge of a skilled artisan when the '098 patent was invented. SDL thus rests its opposition on its misguided theory that a *Graves* version of anticipation applies. At the hearing on this motion, SDL conceded that under the more stringent anticipation standard set out in the reigning Federal Circuit precedent, the Scott and Miederer patents do not anticipate claims 19, 30, 56, and 72 of the '098 patent. SDL argued, however, that claim 50 is anticipated no matter what anticipation test applies.

For the sake of completeness, the court briefly addresses the relationship between all of the contested '098 patent claims and the Scott and Miederer prior art disclosures. The relevant portion of the Scott

---

sent's more specific construction of claim 4 were correct, the prior art reference would still anticipate if the allegedly missing element "is within the knowledge of a skilled artisan." *Id.*

It is difficult to grasp the *Graves* ruling fully because the Federal Circuit does not lay out the content of the prior art reference in dispute. However, the language that "a skilled artisan could take its teachings in combination with his own knowledge of the particular art and be in possession of the invention" may mean nothing more than that one skilled in the art would understand the disputed elements of the patent-in-suit to be necessarily present in the prior art reference. *Id.*

The court also notes that the *Graves* quotation on which SDL relies was taken from two prior decisions out of its original context. *See id.* (quoting *In re LeGrice*, 49 C.C.P.A. 1124, 301 F.2d 929, 936 (1962) and *In re Donohue*, 766 F.2d 531, 533 (Fed.Cir.1985) for the proposition that "[a] reference anticipates a claim if it discloses the claimed invention 'such that a skilled artisan could take its teachings in combination with his own knowledge of the particular art and be in possession of the invention' "). In both *In re LeGrice* and *In re Donohue,* the same quotation establishes a standard for determining whether prior art is enabling (i.e. whether it is in possession of the public). In its original context, the quotation has nothing to do with whether a prior art reference inherently discloses an apparently missing element. It appears that the *Graves* court may have conflated the enablement portion of the anticipation test with the identity portion. This reading of *Graves* is supported by the fact that the court can find no Federal Circuit cases citing *Graves* in an anticipation analysis. Actually, the only Federal Circuit case that cites this portion of *Graves* does so in reference to an obviousness determination. *See In re Robertson*, 169 F.3d 743, 746 (Fed.Cir.1999).

3. For example, Rockwell contends that the pertinent excerpt from *Graves* is non-controlling dictum because it is made in rebuttal to the dissent. *See Batjac Productions Inc. v. GoodTimes Home Video Corp.*, 160 F.3d 1223, 1231–33 (9th Cir.1998) (finding that a portion of a Supreme Court opinion rebutting the dissent was non-controlling dicta).

4. SDL concedes that claims 19, 30, 50, 56, and 72 are not anticipated by U.S.Patent No. 3,364,084 ("the Ruehrwein patent") or by the work of Dr. Robert Thomas.

patent proposes reacting triethylindium and stibine at a temperature of at least 200 degrees. *See* Shatzer Dec., Exh. 4 (Scott Patent, at 2:118–3:12). The Miederer patent teaches a process for growing III–V material on a gallium arsenide rod. *See* Shatzer Dec., Exh. 6. The court finds that claims 19, 30, 50, 56, and 72 of the '098 patent each have at least one element that is neither expressly nor inherently disclosed in the Scott and Miederer patents.

### A. *Claims 19 and 56*

■ Claim 19 depends from claim 17, which discloses that "said first material [i.e. the Group V material] is introduced before introducing said second material [i.e. the Group III material]." Shatzer Dec., Exh. 1 ('098 Patent, col. 12:66–13:8). Claim 56 similarly requires that the Group V constituent be introduced into the reactor before the Group III constituent. *See id.* ('098 Patent, col. 15:17–20). As SDL's expert admits, the Scott patent makes no mention of this order of introduction. *See* Shatzer Dec., Exh. 12 (Stringfellow Dec. ¶ 128). The Miederer patent teaches introducing the Group V and Group III constituents at the same time. *See* Shatzer Dec., Exh. 6 (Miederer Patent, col. 3:31–32).

### B. *Claim 30*

■ Claim 30 depends from claim 28, which states that the Group III material "comprises more than one alkyl compound." Shatzer Dec., Exh. 1 ('098 Patent, col. 13:33–35). The Scott patent discloses the use of triethylindium alone as the Group III constituent. *See* Shatzer Dec., Exh. 4 (Scott Patent, at 3:1). In the Miederer patent, a single alkyl gallium is used as the Group III material. *See* Shatzer Dec., Exh. 6 (Miederer Patent, col. 2:3, 46; 3:27, 49–50).

### C. *Claim 50*

■ Claim 50 mandates that "the single heated zone is about 650˜to about 800." Shatzer Dec., Exh. 1 ('098 Patent, col. 14:45–46). The Scott patent only mentions heating a surface "to at least 200." Shat-

zer Dec., Exh. 4 (Scott Patent, at 3:6). Clearly, a skilled artisan would not consider a limitation of "at least 200" to be the same as a limitation of "about 650˜to about 800." The Miederer patent teaches heating a surface "to a temperature between 100 and 600 C" and further clarifies that the "gallium arsenide core is preferably heated and maintained at a temperature of 400˜C." Shatzer Dec., Exh. 6 (Miederer Patent, col. 1:70; 2:14–15). Thus, the Miederer patent does not spell out the same temperature range found in claim 50.

### D. *Claim 72*

■ Claim 72 discloses that the Group V material is introduced "at or prior to the time said substrate reaches the required temperature for achieving deposition" and that the Group III material is introduced "subsequently to said substrate being heated to said required temperature for deposition." Shatzer Dec., Exh. 1 ('098 Patent, col. 16:35–40). Neither the Scott nor the Miederer patent mentions coordinating the introduction of the constituents with the temperature of the substrate.

Because claims 19, 30, 50, 56, and 72 of the '098 patent each have at least one element that is either different than or absent from the Scott and Miederer patents, the court holds that the Scott and Miederer patents do not anticipate the '098 patent.

### III. *SDL's Cross–Motion for Summary Judgment*

In its cross-motion, SDL asks this court to find that, with the exception of the elements presently identified by Rockwell, the Scott and Miederer patents contain all of the elements of claims 19, 30, 50, 56, and 72. SDL seeks this finding in an effort to streamline subsequent proceedings regarding anticipation. Given the court's ruling that the '098 patent is not anticipated by the Scott and Miederer patents, the court denies SDL's cross-motion.

*CONCLUSION*

For the reasons set forth above, the court GRANTS plaintiffs' motion for partial summary judgment and DENIES defendant's cross-motion for summary judgment.

IT IS SO ORDERED.