# United States Court of Appeals for the Federal Circuit

2008-1546

(Re-examination No. 90/006,467)

IN RE MCNEIL-PPC, INC.

Dianne B. Elderkin, Woodcock Washburn, LLP, of Philadelphia, Pennsylvania, argued for appellant.  With her on the brief were Wendy A. Choi and William F. Smith.  Of counsel was Ruben H. Munoz.

Christina J. Hieber, Associate Solicitor, Office of the Solicitor, United States Patent and Trademark Office, of Alexandria, Virginia, argued for the Director of the United States Patent and Trademark Office.  With her on the brief were Raymond T. Chen, Solicitor, and William G. Jenks, Associate Solicitor.  Of counsel was Robert J. McManus, Associate Solicitor.

Appealed from:     United States Patent and Trademark Office
                   Board of Patent Appeals and Interferences

# United States Court of Appeals for the Federal Circuit

2008-1546
(Re-examination No. 90/006,467)

IN RE MCNEIL-PPC, INC.

Appeal from the United States Patent and Trademark Office, Board of Patent Appeals and Interferences.

_____

DECIDED:  July 31, 2009
_____

Before MICHEL, <u>Chief Judge</u>, RADER, and DYK, <u>Circuit Judges</u>.

Opinion for the court filed by <u>Chief Judge</u> MICHEL.  <u>Circuit Judge</u> DYK dissents.

MICHEL, <u>Chief Judge</u>.

McNeil-PPC, Inc. appeals rejections of claims as obvious.  The Director of the U.S. Patent and Trademark Office ("PTO") seeks dismissal of McNeil's appeal as untimely.  Because we determine that McNeil's appeal is timely, we reach the merits and, because the Board of Patent Appeals and Interferences findings about the disclosures of a prior art patent application are not supported by substantial evidence, we reverse the claim rejections.

## I.    BACKGROUND

McNeil owns U.S. Patent No. 6,310,269, which claims a tampon for feminine hygiene with a solid fiber core in which the core is denser than the radially projecting

"ribs" and the ribs are narrower at their bases than their distal ends, as shown in Figure 4 of the patent:



FIG. 4

McNeil requested that the PTO reexamine its '269 patent based on an unexamined Japanese application by Tetsu Sasaki, No. 55-168330 ("Sasaki"). Sasaki discloses



Figure 6

Figure 7

Figure 8

making a tampon blank by stitching together layers of material (see Figure 6, above), and then molding (as shown in Figure 7, above) the blank into a finished tampon (see Figure 8, above). In light of Sasaki, the examiner rejected claims 1 and 3 as anticipated and claim 4 as obvious.

McNeil appealed to the Board, arguing that Sasaki did not disclose the relative densities or coarseness of the core and ribs on the tampon. McNeil also disputed that Sasaki disclosed ribs which were narrower at the base than at the proximal end. Because McNeil argued claims 1, 3, and 4 together, the Board selected claim 1 as representative. The Board affirmed the examiner's rejection. Ex parte McNeil-PPG, Inc., No. 2007-3158, 2007 WL 3325022 (B.P.A.I. Nov. 8, 2007). It specifically found that "Sasaki reasonably appears to depict a tampon having a generally cylindrical absorbent portion with a generally cylindrical compressed solid fiber core from which longitudinal ribs extend radially outward." Id. at *3.

McNeil filed a request for rehearing, objecting to the Board making findings of fact in the first instance and arguing against the rejections on the merits. The Board denied the request.

The typed date on the face of the Board order denying McNeil's request for rehearing is "May 30, 2008." The mailing sheet for the order is dated June 2, 2008. The online "Transaction History" for the reexam has two entries for May 30, 2008: "Mail BPAI Decision on Reconsideration – Denied" and "Dec on Reconsideration – Denied."

J.A. 320.  The image file wrapper ("IFW"),[1] which is also available online, lists the "Mail Room Date" of the decision as June 2, 2008.  J.A. 296.

McNeil filed a notice of appeal on August 1, 2008.  The Director responded that the appeal was untimely because it was filed more than sixty days after the Board made its final decision on May 30, 2008.[2]

## II.    DISCUSSION

### A.

We address first, as we must, whether McNeil's appeal is timely.  Compliance with the PTO rules regarding the time for an appeal is required by statute, and while the Director can grant extensions of time, we cannot.  See In re Reese, 359 F.2d 462, 463 (CCPA 1966) (per curiam).  The parties agree that whether the Board decided McNeil's motion for reconsideration on May 30 or June 2 determines whether McNeil's appeal is timely.

Congress gave the Director some authority to set the time for filing an appeal:

When an appeal is taken to the United States Court of Appeals for the Federal Circuit, the appellant shall file in the Patent and Trademark Office a written notice of appeal directed to the Director, within such time after the date of the decision from which the appeal is taken as the Director prescribes, but in no case less than 60 days after that date.

35 U.S.C. § 142 (emphasis added).  The regulations promulgated under this statute

---

[1]    The IFW system contains the official records of PTO proceedings.  See Changes to Implement Electronic Maintenance of Official Patent Application Records, 68 Fed. Reg. 38,611, 38613 (June 30, 2003) ("The Office plans to capture electronic images of all documents that form the record of patent application examination.  These images will form the Official file of the application.").

[2]    We issued an order to show cause why McNeil's appeal should not be dismissed for lack of jurisdiction.  After both parties responded, we ordered the parties to address the timeliness of McNeil's appeal in their briefs on the merits.

provide, in pertinent part:

> The time for filing the notice of appeal to the U.S. Court of Appeals for the Federal Circuit (§ 1.302) or for commencing a civil action (§ 1.303) is <u>two months</u> from the date of the decision of the Board of Patent Appeals and Interferences. <u>If a request for rehearing or reconsideration of the decision is filed within the time period provided under § 41.52(a), § 41.79(a), or § 41.127(d) of this title, the time for filing an appeal or commencing a civil action shall expire two months after action on the request.</u>

37 C.F.R. § 1.304(a)(1) (emphasis added). Elsewhere, this regulation makes clear that the "two months" language is to simplify the calculation of the due date, making the due date the same date as the decision date but two months later (with certain exceptions, such as for the short month of February), as opposed to calculating exactly sixty days. <u>Id.</u> § 1.304(b). There is also a provision extending deadlines that fall on weekends or holidays, but none of the dates at issue on appeal are weekends or holidays. <u>Id.</u>

The crux of the matter is what the phrase "the date of the decision," which appears in both the statute and the regulation, means. The second sentence of the regulation quoted above actually uses different phrasing to set the time to appeal from decisions on requests for reconsideration (i.e., "action on the request"), but the intent is that the same sixty-day rule (and not some shorter time period) applies after a denial of a request for reconsideration. <u>See</u> Amendment of Patent and Trademark Rules Concerning Judicial Review of Decisions of the BPAI, 54 Fed. Reg. 29,548, 29,550 (July 13, 1989).

Unfortunately, there is little that indicates whether we should or must attribute any meaning to the "May 30, 2008" date which appears on the first page of the Board's decision. The Director did not explain the Board's internal procedure for issuing opinions or whether the June 2, 2008 mailing date reflects the first time the decision

was released to the public. McNeil, however, presented a declaration from Jeffrey Nase, a now-retired member of the Board from 1996 to 2006, who had been employed by the PTO continuously before that going back to 1973. The Director did not challenge any of Nase's factual assertions.

The following is a summary of Nase's declaration: Historically, the date the PTO mailed a document was the date that triggered any response period. It is unclear why the opinion says "Decided: May 30, 2008" but was not mailed until June 2—perhaps the mail room was slow, or perhaps one of the members of the Board panel decided to revise the opinion or reconsider it over the weekend of May 31 and June 1, 2008. Before August 2006, the date decided was hand-stamped on the front of opinions; beginning only in August 2006 did the Board decision have the date decided typed on the front. Nase opines that if the PTO had intended this minor formatting change to have substantive effect, there would have been public notice (which there was not).

The PTO argues that both 35 U.S.C. § 142 and 37 C.F.R. § 1.304(a)(1) state that the time to appeal runs from "the date of decision," and the opinion says "Decided: May 30, 2008," so it would be contrary to the language of the statute and the regulation for us to deem the date of decision to be the date the order was mailed. While this argument has some superficial appeal, the inner workings of the agency are far more important than the PTO admits. Based on the evidence before us, it appears that only when an opinion is released to the public (or at least the parties) is it truly decided—until then, it is possible for the Board to decide to revise it.

The PTO's position is supported by the entries on the "Transaction History" page indicating that the case was decided and the opinion mailed May 30. However, the

parties apparently agree that the decision was not actually mailed on May 30, but on June 2, making the "Transaction History" inaccurate, and the IFW lists June 2 as the mail room date.

The PTO also relies on an unpublished order, Barbacid v. Brown, 223 F. App'x. 972 (Fed. Cir. 2007), in which we held that one party to an interference, Barbacid, had filed an untimely appeal after the Board mailed its decision to the other party but not to Barbacid. Barbacid appealed as soon as he became aware of the Board's decision, but we stated, "The time is not measured from the date of receipt of the Board's decision but from the date of the decision itself." Id. (emphasis added). We did not, however, specify what "the date of the decision" was, and Barbacid had appealed late enough that an extra day or three was not the difference between his appeal being timely or untimely—unlike the situation faced by McNeil.

Because the "Transaction History" page appears inaccurate, and because Nase's declaration provides the most plausible explanation for the conflicting evidence of when the Board took action on McNeil's request for reconsideration and is corroborated by the IFW entry, we find that the Board issued its decision on McNeil's request on June 2, 2008, and that the Board therefore decided this case on June 2, 2008, not May 30. McNeil's appeal is therefore timely.

B.

Turning to the merits, we must determine whether substantial evidence supports the Board's determination that Sasaki discloses a tampon with the characteristics

claimed by McNeil. See In re Graves, 69 F.3d 1147, 1151 (Fed. Cir. 1995). McNeil's claim 1 reads:

1. A tampon for feminine hygiene, comprising

a generally cylindrical absorbent portion having a generally cylindrical compressed, solid fibre core from which longitudinal ribs extend radially outward,

wherein each of the ribs has a proximal end attached to the fibre core, each of the ribs is compressed less than the fiber core, thereby having a coarser capillary structure than the fibre core,

each of the ribs is separated from adjacent ribs at the proximal end by an amount greater than such rib is separated from an adjacent longitudinal rib proximate the distal end.

(Formatting and emphasis added). The Board found that the underlined portions of claim 1 were disclosed by Sasaki, and McNeil challenges each of these findings on appeal.

The Board determined that Sasaki disclosed "a tampon wherein 'each of the ribs is compressed less than the fiber core, thereby having a coarser capillary structure than the fibre core.'" McNeil, 2007 WL 3325022 at *4. It is not entirely clear, however, that the Board understood McNeil's claim. In its initial decision, the Board stated, "We find that Sasaki's Figures 8 and 10 reasonably appear to depict the ribs of its tampon as being compressed less at their distal ends than at their ends proximal to the drawstring at the center of the drawn fiber strips." Id. at *3 (emphasis added). McNeil's claim, however, states that the ribs are less dense than the core, not that the distal ends of the ribs are less dense than the proximal ends.

Furthermore, nothing in Sasaki indicates the relative compression of any portion of Sasaki's tampon.[3] Figure 6, right, can be reasonably interpreted to show that the junction of the three strips of



Figure 6

absorbent material is compressed relative to the rest of the strips—Figure 6 shows the three strips as thinner at this junction than elsewhere. However, Figure 6 depicts a tampon blank, not a finished tampon. There is no evidence that this compression at the center of the tampon blank leads to a finished product with a core denser than the ribs. As shown in Figures 7 and 8, below, the blank of Figure 6 is compressed into a

Figure 7

Figure 8

---

[3]  Figure 4 of McNeil's patent, in contrast, uses hatching to indicate the differing density between the core and rib portions of the tampon.

cylindrical shape, and the PTO has not explained how this change in shape necessarily leaves the ribs less dense than the core. In its initial decision, the Board quoted a claim of Sasaki, which stated that "compressed masses [are] formed at equal intervals along the axial line direction on the outside circumferential surface of the tampon." Id. at *3. However, Sasaki makes no comparison between these "compressed masses" and any core. In fact, it is not clear that Sasaki contains a "core" at all. Instead, Figure 8 is drawn in such a way that suggests Sasaki's tampon is composed of six ribs and no core. There is not substantial evidence, indeed, no evidence, that Sasaki discloses ribs "compressed less than the fiber core" or "a generally cylindrical compressed, solid fibre core."

In its appeal brief before the Board, McNeil stated that "two key elements of the tampon are . . . absent from Sasaki, i.e., the relative rib compression and spacing from adjacent ribs." Id. at *1. The PTO argues that this shows that McNeil waived arguments about Sasaki's lack of a "generally cylindrical compressed, solid fibre core" and "coarser capillary structure than the fibre core." The PTO's reading of McNeil's appeal brief is unduly parsimonious. McNeil went on to state that "Sasaki does not disclose, teach, or suggest a tampon, wherein 'each of the ribs is compressed less than the fiber core, thereby having a coarser capillary structure than the fibre core,' as required by claims 1 and 3." J.A. 141 (emphasis added). Just as the Sasaki figures do not indicate the relative compression of the different portions of the tampon, the Sasaki figures completely lack any indication of the relative coarseness of different portions. And, as noted above, McNeil's arguments regarding relative compression of the core

and ribs encompass the issue of whether Sasaki discloses "a generally cylindrical compressed, solid fibre core."

Lastly, turning to the issue of spacing of the ribs, Figure 8 shows a space between the bottommost ribs, and there is arguably some space shown between other ribs. However, because it is neither clear that Sasaki discloses a core nor which portions of Sasaki's tampon the Board considered to be the ribs and which the Board considered to be the core, we cannot say that substantial evidence supports the Board's determination that Sasaki discloses ribs separated from each other "at the proximal end by an amount greater than" than at "the distal end."

The Board's rejection of claim 1 as anticipated lacks substantial evidentiary support and is therefore reversed. Because claims 1, 3, and 4 stood or fell together, the rejections of claims 3 and 4 are also reversed.

## CONCLUSION

For the reasons provided above, the decision of the Board is

<u>REVERSED</u>.

# United States Court of Appeals for the Federal Circuit

2008-1546
(Re-examination No. 90/006,467)

IN RE MCNEIL-PPC, INC.

Appeal from the United States Patent and Trademark Office, Board of Patent Appeals and Interferences.

DYK, <u>Circuit Judge</u>, dissenting.

The decision of the Board of Patent Appeals ("Board") clearly states on its face that it was "Decided: May 30, 2008." Because McNeil did not appeal until August 1, 2008, two days after the regulatory period for review from a decision of May 30, 2008, in my view this appeal was untimely filed and is beyond our jurisdiction to review. I respectfully dissent from the majority's contrary conclusion.

The jurisdiction of this court is statutorily limited by the timeliness regulations of the Patent and Trademark Office ("PTO"). The statute provides: "When an appeal is taken to the United States Court of Appeals for the Federal Circuit, the appellant shall file in the Patent and Trademark Office a written notice of appeal directed to the Director, <u>within such time after the date of the decision from which the appeal is taken as the Director prescribes</u>, but in no case less than 60 days after that date." 35 U.S.C. § 142 (emphasis added). As the Supreme Court has stated, when the time for filing a notice of appeal is limited by statute, those limits are "mandatory and jurisdictional."

Bowles v. Russell, 551 U.S. 205, 127 S. Ct. 2360, 2363 (2007). The regulations authorized by 35 U.S.C. § 142 require, with certain exceptions inapplicable here, that:

> The time for filing the notice of appeal . . . is two months from the date of the decision of the Board . . . . If a request for rehearing or reconsideration of the decision is filed . . . the time for filing an appeal or commencing a civil action shall expire two months after action on the request.

37 C.F.R. § 1.304(a)(1). In the notice accompanying the promulgation of this regulation, the PTO characterized the relevant date as the date of "decision on reconsideration." Amendment of Patent and Trademark Rules Concerning Judicial Review of Decisions of the Board, 54 Fed. Reg. 29,548, 29,550 (July 13, 1989). As the majority also correctly notes, the term "action on the request" has the same meaning in this context as "date of the decision" and "[t]he crux of the matter is what the phrase 'the date of the decision' . . . means." Maj. Op. 5.

There are four sources for dates referenced by the parties in this case. First, the opinion of the Board indicates on the first page, in the caption, that the decision was "Decided: May 30, 2008." Second, the PTO's online Transaction History also indicates that May 30, 2008, was the date of "Dec on Reconsideration – Denied." Third, the image file wrapper contains an entry stating that the "Mail Room Date" of the opinion was June 2, 2008. Fourth, a "mailing sheet" attached to the paper copy of the decision mailed by the PTO to McNeil indicates a "MAIL DATE" of June 2, 2008. The contents of these documents do not appear to be in dispute; neither is there any dispute that the decision was mailed on June 2, 2008. The only dispute is about which of these dates represents the "date of decision" as reflected in the statute and regulations.

The majority appears to hold that the "date of the decision" is not the date of decision as clearly written on the opinion, but is instead the date of mailing. In my view, this holding is contrary to the plain language of the regulation and precedent interpreting the nearly identical language of the predecessor rule.

When the members of the Board who authored and signed on to the opinion explicitly stated on the opinion that it was decided on May 30, 2008, this should be conclusive. The majority offers no reason to reject this date as the date of the Board's decision, other than its theoretical concern that the decision could be changed by the Board some time after the "Decided" date was affixed to the decision before the decision was mailed. The majority states that "it appears that only when an opinion is released to the public . . . is it truly decided—until then, it is possible for the Board to revise it," Maj. Op. 6, though the majority points to no evidence that such revision in fact occurs or that, if it does, the "Decided" date is not revised. Thus, the majority holds that the date of mailing must be viewed as the "date of decision."

As the plain language of the statute and regulation state, the relevant date is the "date of decision," not the date of mailing. In adopting the "date of decision," both Congress and the PTO clearly rejected the mailing date as determinative. If Congress and the PTO had intended to refer to the mailing date, they could easily have done so. The PTO specifically prescribes the "mailing date of the action or notice from which relief is requested" as the relevant time for triggering the two month time limit for petitions to the Director. 37 C.F.R. § 1.181(f); see also § 1.97(c) ("mailing date" of a final decision as the deadline for filing an information disclosure); § 2.105(a) (time for

2008-1546                                3

filing an answer to an opposition measured from the "mailing date of the notification" of opposition).

This precise issue has been addressed before and these prior decisions have uniformly rejected the majority's approach.  In <u>Burton v. Bentley</u>, 14 App. D.C. 471, 1899 WL 16315 (C.A.D.C. 1899), the Court of Appeals for the District of Columbia, a predecessor of the D.C. Circuit, addressed the time for appealing a decision of the Patent Office when the mailing date and the date on the decision did not coincide.  At that time, the prior version of the rule required that appeals from the Patent Office "shall be taken within forty days <u>from the date of the ruling or order appealed from</u>, and not afterward."  <u>Id.</u> at *1.  In <u>Burton</u>, it was written on the decision itself that it was signed on December 10, while the decision was not mailed until two days later on December 12.  The court in <u>Burton</u> held that the relevant date was the date the order was made and signed by the deciding official, and that a two-day clerical delay in mailing the order was irrelevant to the date of decision.

> There is no question but that the order was <u>made and signed by the Commissioner on December 10, 1898, and that it was the same day deposited with the file clerk in the usual course of proceeding</u>. . . . It is true, the notice of the order sent out to the appellant, or to his attorney, <u>was not sent out until Monday, December 12, 1898</u>; but the rule limiting the time of appeal has no reference to the notice of the order given to the appellant or his attorney. <u>It is from the date of the ruling or order; that is to say, within forty days from that date, that the appeal must be taken, and not the time of sending notice of the order to the party against whom it is made.</u>
>
> The terms of the rule must be allowed their ordinary meaning and import, and they plainly limit the commencement of the period of forty days, within which an appeal can be taken, from the date of the order appealed from, excluding the day of the date.  To allow the time to be computed from any other act or event, in the course of the proceeding, would

> certainly not be within the terms of the rule, but, on the contrary, would be plainly violative of those terms.

Id. (emphases modified and citations omitted). In my view, the court in Burton correctly decided that the date of decision was the date the opinion was signed, not the date the opinion was mailed. As such the same rule should apply to this case; "[t]o allow the time to be computed from any other act or event . . . would be plainly violative of the [terms of the rule]." Id.

This view is also reflected in the decision of one of this court's predecessors, the Court of Customs and Patent Appeals. The Court referred to the relevant "date of the decision appealed from" in In re Reese, 359 F.2d 462, 463 (CCPA 1966), as the date that the decision itself was dated, stating: "The decision on the petition was dated September 21, 1964, which started the [period of the prior provision] running."

Additionally, in Barbacid v. Brown, 223 F. App'x 972, 973 (Fed. Cir. 2007), this court held in a non-precedential decision that "the time for filing the appeal to this Court is two months from the date of the decision of the Board. The time is not measured from the date of receipt of the Board's decision but from the date of the decision itself." This court rejected the mailing date in favor of the date of the decision, despite the fact that in that case the appellant alleged that he had never been mailed a copy of the decision because of an error by the Board. It should also be noted that the existence of any delay in mailing the decision imposes no unfair burden on the parties because there is a lengthy period for appeal and because the Board has the power to extend time still further in situations where there is "excusable neglect." See 37 C.F.R. § 1.304(a)(3)(ii). There is no claim here that the appellant did not have adequate time to prepare his appeal.

In my view, because the date of decision in this case was May 30, 2008, we do not have jurisdiction to review pursuant to the untimely notice of appeal filed August 1, 2008.  As such, I would dismiss this appeal.